## DOCUMENT 4 OF 5
## THE COMPLAINT — FILING READY
### Print 3 copies. Attach Exhibits A–E behind each copy.

FILED BY _____ D.C.

JUN 2 4 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

---

**JENNA-MAE FINDLEY,**
Plaintiff,

v.

**EQUIFAX INFORMATION SERVICES LLC,** c/o CT Corporation Systems
Defendant.

Case No.: _____
(assigned by clerk upon filing)

---

## COMPLAINT FOR DAMAGES
## JURY TRIAL DEMANDED

## INTRODUCTION

Plaintiff Jenna-Mae Findley brings this action against Equifax Information Services LLC for willful and negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. This action arises from Equifax's failure to conduct a reasonable reinvestigation of disputed information on Plaintiff's credit file. In response to a complaint filed with the Consumer Financial Protection Bureau, Equifax stated that the disputed First Premier Bank tradeline was not reporting on Plaintiff's Equifax credit file; however, subsequent Equifax credit reports showed that the tradeline remained on Plaintiff's file. Twenty days after Equifax made that statement, Plaintiff suffered a documented adverse housing action resulting in $2,260.00 in out-of-pocket financial loss. The disputed tradeline remains on Plaintiff's Equifax credit file as of the date of this Complaint.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 15 U.S.C. § 1681p, which confers jurisdiction in any appropriate United States district court for actions brought under the Fair Credit Reporting Act.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in Broward County, Florida, within the Southern District of Florida. The adverse housing action at issue involved a rental property located at 12205 SW 30th Street, Miramar, Florida 33025, and Plaintiff suffered the resulting financial harm in this District.

3. Defendant Equifax Information Services LLC regularly conducts business throughout Florida, including within this District, by maintaining consumer credit files, conducting investigations of consumer disputes, and furnishing consumer reports concerning Florida residents. Defendant therefore has sufficient minimum contacts with Florida and is subject to personal jurisdiction in this Court.

## PARTIES

4. Plaintiff Jenna-Mae Findley is a natural person currently residing in Broward County, Florida. Plaintiff is a "consumer" as that term is defined under 15 U.S.C. § 1681a(c).

5. Defendant Equifax Information Services LLC is a limited liability company organized under the laws of the State of Georgia, with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Equifax regularly assembles, maintains, evaluates, and disseminates consumer credit information and furnishes consumer reports to third parties for compensation throughout the United States, including within the State of Florida.

## FACTUAL ALLEGATIONS

**6.** At all times relevant to this action, Equifax maintained a consumer credit file on Plaintiff and regularly furnished consumer reports derived from that file to third parties for credit and housing purposes.

**7.** The First Premier Bank credit card account ending in 8420 (hereinafter "the Account") was opened on August 15, 2021, with a credit limit of $300. The Account is an individual revolving credit account classified as a credit card.

**8.** The Account went into first delinquency on or around October 20, 2022. At all times relevant to this action, Equifax reported the Account with a status of CHARGE_OFF and a balance of $466. Plaintiff disputed the continued reporting of the Account with Equifax.

**9.** On July 31, 2025, and continuing through the filing of this Complaint, Plaintiff disputed the continued reporting of the First Premier Bank tradeline. Plaintiff submitted each dispute personally and directly, without the involvement of any third-party credit repair company or authorized representative.

**10.** Prior to and during the period in which Plaintiff disputed the Account, Plaintiff received collection communications from multiple separate entities regarding the same First Premier Bank debt, including but not limited to: TrueAccord (referencing a First Premier Bank credit card account with a balance of $466.81), January Technologies, Inc. (referencing an account "from First Premier Bank"), and Jefferson Capital Systems, LLC (referencing a "Premier Bankcard" account). None of these entities was reporting the Account on Plaintiff's Equifax credit file. As a result of these conflicting communications from multiple parties claiming an interest in the same debt, Plaintiff was unable to determine who owned the Account, and disputed the Account with Equifax on that basis, seeking a reasonable reinvestigation of the disputed information.

**11.** On July 31, 2025, Plaintiff filed CFPB Complaint No. 250731-22798212 with the Consumer Financial Protection Bureau regarding the continued reporting of the First Premier Bank tradeline on Plaintiff's Equifax credit file and Equifax's handling of Plaintiff's disputes concerning that tradeline.

**12.** On August 1, 2025, Equifax acknowledged receipt of the CFPB complaint and stated it was still working on the issue and would follow up within sixty days.

**13.** On September 24, 2025, Equifax submitted its official written response to CFPB Complaint No. 250731-22798212 through the CFPB portal. In that response, Equifax stated the following regarding the First Premier Bank tradeline: "THE DISPUTED ITEM IS NOT CURRENTLY REPORTING ON THE EQUIFAX CREDIT FILE."

**14.** Contrary to that statement, the First Premier Bank Account was reporting on Plaintiff's Equifax credit file on the date of Equifax's response and continued to report thereafter, as reflected in Equifax credit reports dated October 30, 2025 and June 14, 2026. Because Equifax responded that the disputed Account was not reporting, Equifax did not reinvestigate the substance of Plaintiff's dispute, including the ownership conflict described in Paragraph 10, as required by 15 U.S.C. § 1681i.

**15.** On October 14, 2025, approximately twenty days after Equifax submitted its CFPB response regarding the disputed tradeline, Plaintiff received an official Adverse Action Notice from Vibe

Residences, located at 12205 SW 30th Street, Miramar, Florida 33025, generated through RealPage/LeasingDesk Screening Services.

**16.** The Adverse Action Notice explicitly states that the leasing decision was based in whole or in part on information obtained from Equifax. The Notice identifies Equifax by name and mailing address (P.O. Box 105873, Atlanta, Georgia 30348) as the consumer reporting agency whose data was used. This notice is a federally mandated disclosure required under 15 U.S.C. § 1681m. Plaintiff's Equifax credit score as reported on that date was 620.

**17.** The Adverse Action Notice states the adverse decision was based on the following reasons: "Credit history unsatisfactory" and "Applicant type / Scoring Range Condition." The Notice further identifies "delinquent or derogatory accounts" as a key factor that adversely affected Plaintiff's credit score. The First Premier Bank tradeline reporting as CHARGE_OFF was among the derogatory accounts appearing on Plaintiff's Equifax credit file at the time of the screening.

**18.** The Adverse Action Notice also reflects an AI Score of 555 out of 1000 generated by LeasingDesk Screening, with adverse factors including "Tradeline scoring" and "Credit Score" — both of which are directly downstream of Equifax's credit data. The First Premier Bank tradeline was a substantial contributing factor in the adverse housing determination because the screening report identified credit-related factors and tradeline scoring as adverse considerations.

**19.** As a direct result of Equifax's continued reporting of the disputed tradeline following Plaintiff's disputes and Equifax's CFPB response, Plaintiff was required to pay an additional security deposit of $2,260.00 above the standard security deposit as a condition of tenancy at Vibe Residences. This $2,260.00 has been paid in full by Plaintiff and constitutes a confirmed out-of-pocket financial loss.

**20.** Plaintiff's Equifax credit report dated October 30, 2025 confirms that the First Premier Bank Account was reporting as CHARGE_OFF with a balance of $466 on that date. The report shows that the tradeline remained on Plaintiff's Equifax credit file after Equifax's September 24, 2025 CFPB response.

**21.** Plaintiff's Equifax credit report dated June 14, 2026 confirms that the First Premier Bank Account continued to report as CHARGE_OFF on Plaintiff's Equifax credit file as of the filing of this Complaint. A summary view of Plaintiff's Equifax credit report dated May 15, 2026 further reflects the continued presence of the Account on Plaintiff's file.

**22.** On April 13, 2026, Plaintiff sent a final pre-litigation demand letter via USPS Certified Mail to Equifax Information Services LLC, Office of General Counsel, 1550 Peachtree Street NW, Atlanta, Georgia 30309. Following receipt of the demand letter, Equifax did not provide a substantive response from its legal department regarding the issues raised in the demand. Instead, Plaintiff received a form correspondence generated from Equifax's consumer dispute processing center at P.O. Box 740256, Atlanta, Georgia 30374-0256, requesting additional identity documentation. The correspondence did not address the substance of Plaintiff's demand, the CFPB response, the continued reporting of the disputed tradeline, or Plaintiff's documented damages, and did not provide the requested relief.

**23.** At all times relevant to this action, Plaintiff submitted all disputes, CFPB complaints, and correspondence personally and directly. Plaintiff was not represented by any credit repair company, third-party service, or authorized agent.

**24.** As a result of Equifax's conduct, Plaintiff has suffered actual damages including but not limited to the $2,260.00 out-of-pocket loss paid as an additional security deposit; harm to Plaintiff's creditworthiness; and emotional distress, all sustained over a period of more than ten months.

**25.** The conduct described herein was willful within the meaning of 15 U.S.C. § 1681n. Equifax received Plaintiff's dispute, responded that the disputed item was not reporting while the Account continued to appear on Plaintiff's file, and did not reinvestigate the substance of the dispute. These facts support an inference that Equifax acted with reckless disregard for its obligations under the Fair Credit Reporting Act. In the alternative, such conduct was negligent within the meaning of 15 U.S.C. § 1681o.

## CAUSES OF ACTION

### COUNT I — WILLFUL NONCOMPLIANCE
### 15 U.S.C. § 1681n — Fair Credit Reporting Act

**26.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**27.** Equifax is a consumer reporting agency subject to the requirements of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

**28.** Equifax willfully violated the FCRA in the following respects:

(a) Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute as required by 15 U.S.C. § 1681i. Upon receiving a dispute that raised a conflict regarding ownership of the Account, Equifax responded that the disputed item was not reporting on Plaintiff's credit file, while the Account in fact continued to appear on Plaintiff's file, and thereby did not reinvestigate the substance of the dispute.

(b) By responding that the disputed Account was not reporting on Plaintiff's credit file when the Account continued to appear on that file, Equifax failed to conduct a reasonable reinvestigation of the substance of Plaintiff's dispute, including the ownership conflict described in Paragraph 10, and maintained procedures insufficient to assure compliance with 15 U.S.C. § 1681i.

**29.** As a result of Equifax's willful noncompliance, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1681n(a)(1)(A), statutory damages as permitted by 15 U.S.C. § 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), costs of litigation as permitted by law, and such further relief as the Court deems appropriate.

## COUNT II — NEGLIGENT NONCOMPLIANCE

### 15 U.S.C. § 1681o — Fair Credit Reporting Act (Pleaded in the Alternative)

**30.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**31.** In the alternative, if the Court finds that Equifax's conduct does not constitute willful noncompliance, Equifax negligently failed to comply with the Fair Credit Reporting Act, including its obligations under 15 U.S.C. § 1681i to conduct a reasonable reinvestigation of disputed information after receiving Plaintiff's disputes.

**32.** As a result of Equifax's negligent noncompliance, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. §1681o(a)(1) and such costs and other relief as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jenna-Mae Findley respectfully requests that this Court enter judgment in her favor and against Defendant Equifax Information Services LLC and award the following relief:

**A.** Actual damages in an amount to be determined at trial, including but not limited to the $2,260.00 additional security deposit paid by Plaintiff as a result of the adverse housing determination, together with damages for emotional distress and other actual damages proven at trial;

**B.** Statutory damages as authorized by 15 U.S.C. § 1681n(a)(1)(A);

**C.** Punitive damages in an amount sufficient to punish Equifax for its willful and reckless disregard of the FCRA's requirements and to deter future similar conduct, pursuant to 15 U.S.C. § 1681n(a)(2);

**D.** Costs of litigation and such other recoverable expenses as permitted by law, including any relief available under 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2);

**E.** Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

**Jenna-Mae Findley**

Plaintiff, Pro Se

12385 SW 30th Street, Apt 311

Miramar, Florida 33025

Telephone: 571-282-7267

Email: jennafind@gmail.com

Date:  06 · 24 - 2026

## EXHIBITS LIST

Attach these documents in order behind the complaint:

**Exhibit A** — CFPB Complaint No. 250731-22798212 and Equifax's official response dated September 24, 2025 stating First Premier "not currently reporting"

**Exhibit B** — Equifax credit report dated October 30, 2025 showing the First Premier Bank Account reporting as CHARGE_OFF.

**Exhibit C** — Adverse Action Notice from Vibe Residences / RealPage / LeasingDesk Screening dated October 14, 2025, identifying Equifax as the reporting bureau and specifying the $2,260.00 additional deposit required.

**Exhibit D** — Equifax credit report dated June 14, 2026 showing the First Premier Bank Account reporting as CHARGE_OFF, and Equifax credit report summary dated June 24, 2026 reflecting the continued presence of the Account, after Equifax's September 24, 2025 CFPB response.

**Exhibit E** — Pre-litigation demand letter dated April 13, 2026 sent via certified mail to Equifax General Counsel, together with Equifax's subsequent identity-verification correspondence generated from its consumer dispute processing center

**Exhibit F** — Collection communications from TrueAccord, January Technologies, Inc., and Jefferson Capital Systems, LLC, each referencing the First Premier Bank / Premier Bankcard debt, demonstrating the conflicting ownership claims that formed the basis of Plaintiff's dispute.